*Hartford,*
June, 1831.

Watson
*v.*
Osborne.

</div>

---

### Marshall and others *against* Niles and another.

Where the premises in a deed were thus described—" a certain grist mill and bank whereon the same is situated, with the appurtenances thereof, lying and being on the *South* side of *Farmington* river, and *West* of and adjoining to the bridge which crosses said river ;" it was held, that the bank between such grist mill and bridge, on which a carding mill stood, was conveyed by such deed.

Where the grantor in such deed reserved " the building adjoining on the *East* end of said mill," wherein his carding machine was then in operation, with the use of water for certain purposes and on certain conditions ; it was held, that such reservation included the building only, and not the land on which it stood ; and that the right so reserved was also restricted to the buildings then existing, and did not extend to any other building subsequently erected on the same site.

This was an action of ejectment for a small piece of land, being the site of a building occupied for a carding machine, on the *South* side of *Farmington* river, in the parish of *Poquonnock* in *Windsor.*

The cause came on for trial, on the general issue, at an adjourned term in *Hartford,* in *May* 1831, before *Daggett, J.,* when a case, embracing the following facts, was agreed to, by the parties, and reserved for the advice of this Court, as to what judgment ought to be rendered.

47

The plaintiffs claim the premises, by a deed, dated the 26th of *July* 1816, from *Timothy Soper, William Soper* and *Seth Soper,* to *Eliakim Marshall,* one of the plaintiffs, and to *Joshua Latham. Latham* has conveyed all his interest in the premises to *Oliver Mather,* deceased, to whom the plaintiffs, except *Marshall,* are heirs, and who are entitled to recover whatever interest was vested in *Latham.* The deed in question is in these words : " Know all men, by these presents, that we, *Timothy Soper, William Soper* and *Seth Soper,* all of *Windsor,* &c. for divers good causes and considerations thereunto moving, especially for the sum of 2000 dollars, received to our full satisfaction of *Eliakim Marshall* and *Joshua Latham,* of said *Wndsor,* have remised, released and forever quit-claimed, and do, by these presents, for ourselves and our heirs, justly and absolutely remise, release and forever quit-claim unto the said *Eliakim Marshall* and *Joshua Latham,* and to their heirs and assigns forever, all such right and title as we the said *Timothy, William* and *Seth* have, or ought to have, in or to a certain grist-mill and bank whereon the same is situated, with the appurtenances thereof, the same lying and being in said *Windsor,* on the *South* side of said river, and *West* of and adjoining to the bridge, which crosseth said river, in the parish of *Poquonnock ;* also the corn kiln within said mill ; the horse shed adjoining said mill ; also the mill dam ;—excepting and reserving the building adjoining on the *East* end of said mill, wherein my carding machine is now in operation, with water to be taken out of the saw mill floom sufficient to carry either one double or two double carding machines, at my option, and at all times, and also sufficient water to carry the saw mill situated at the *East* side of said bridge, or any other saw mill that may hereafter be erected at that place, when there ahall be water left sufficient to carry said grist mill and carding machines, and then only provided always, that the said *William Soper,* his heirs, administrators and executors (for whom all these privileges are reserved) shall support and keep in repair one-sixth part of said mill dam, when he shall use water only sufficient to carry two double carding machines ; but when he, his heirs or assigns (for whom all these privileges are reserved) shall use water sufficient to carry two double carding machines, he or they shall support and keep in repair one quarter of said mill dam. And furthermore, I, the said *William,* one of the releasors, do hereby, for myself, my heirs and as-

signs, executors and administrators, covenant with the said *Hartford*, *Eliakim Marshall* and *Joshua Latham*, their heirs and assigns, that they shall have the right and privilege of entering into and upon the land *North* of said mill dam, and upon which said mill dam adjoins, for the purpose of erecting a new dam, or of making all necessary repairs to this dam, or any other dam at or near that place erected, doing the least possible injury to said land and crops thereon, and with liberty of raising said dam, in every part, to the present greatest heights of the present existing dam ; and all injury arising therefrom to said land shall be at my risk, without any right to claim or demand any damages therefor ; provided, however, that the said *Eliakim* shall not erect any saw mill or carding machine to be supplied with water drawn from said grist mill pond, so long as I, or my heirs, shall keep in operation, in their proper season, a saw mill and carding machine, at the place they now stand, on the opposite side of said river ; then this covenant to be null and void, otherwise to remain in full force and virtue in law.—*To have and to hold* the premises unto them the said *Eliakim* and *Joshua,* and to their heirs and assigns, to the only use and behoof of them, and of the said heirs and assigns forever, so that neither we, the said *Timothy, William* and *Seth,* nor any other person in our name and behalf, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, *viz.* said grist mill, corn kiln, horse shed and mill dam, excepting and provided as before excepted and provided ; but they, and every of them, shall, by these presents, be excluded and forever barred. In witness whereof," &c.

The grist mill mentioned in and conveyed by this deed, stands on the *South* side of *Farmington* river, part of it on the bank, and part on the bed or channel of the stream, directly *West* of a bridge, which crosses the river. At the time of the execution of the deed, there was a small open building attached to the *East* side of the grist mill, and extending *East* to the bridge, used as a shed to accommodate the mill. *North* of this building and between the *North* part of the grist mill and the bridge there stood a building, then and ever since occupied for a carding machine. It was not attached to the mill, but it came within one foot of it ; and it extended *North* into the river, several feet beyond the mill. The carding machine, at the time of the delivery

*Hartford,*
*June, 1831.*

Marshall
*v.*
Niles.

of the deed, was propelled, by water taken from the dam of the grist mill, and continued to be afterwards, pursuant to the reservation in the deed, until the *Spring* of 1829 ; when the building, being much decayed, and deemed by the defendents not worth repairing, was taken away, and a new one erected in the same spot, for the accommodation of the carding machine and the use of the water reserved by the deed. This building covers all, or nearly all, the land demanded in the declaration ; *(a)* and the plaintiffs claim, that this land was included in and conveyed by the deed above recited, and that the reservation in that deed excepted only the building then standing.

The defendants have a deed, which, it is admitted, conveys to them the land in question, provided it was not conveyed to the plaintiffs, in their deed. The defendants were, at the service of the plaintiffs' writ, and still are, in possession.

*W. W. Ellsworth,* for the plaintiffs, contended, 1. That the land in question was included in and conveyed by the deed, under which the plaintiffs claim title. The premises are " a certain grist mill, and bank whereon the same is situated, with the appurtenances thereof." The limit of this " bank" on the *West* is not given, otherwise than by the mill ; but on the *East,* it is thus bounded : " *West* of and *adjoining to the bridge.*" The bank conveyed, then, extends from the *West* end of the mill to the bridge, and of course includes the site of the carding mill. That such is the extent of the grant, is apparent

*(a)* The following diagram exhibits a correct representation of the buildings and of their relative position.

a Carding-machine building.
b Horse-shed.
● Saw-mill.
d Floom for carding-machines and saw-mill.
e Dam.
f Bridge.

also from the fact, that the parties deemed it necessary to make *Hartford,* an express reservation of the carding mill. If the description June, 1831. of the premises is of doubtful construction, that construction is to be adopted, which is most favourable to the grantees.

Marshall *v.* Niles.

2. That the reservation to *William Soper* embraced the *building* only, without the bank. The words are : " excepting and reserving *the building* adjoining on the *East* end of said mill, wherein my carding machine is now in operation."

*N. Smith* and *Niles*, for the defendants, insisted, 1. That the land demanded was not included in the grant. In support of this proposition, the following considerations were urged. First, the premises conveyed are not described by metes and bounds, but by *name*. The mill, horse shed, corn kiln and dam, and the bank whereon they stand, are specified in the deed. Secondly, no land is conveyed, except what was occupied by the buildings and works. Thirdly, the words in the deed, " *West* of and adjoining the bridge," are not used by way of description of the premises, but as a general location. Fourthly, the intention of the parties to convey only the specific property named, is clear ; and that intention can be carried into effect, without violence to the language of the deed, or to any principle of law. 2 *Bla. Comm.* 379. 1 *Swift's Dig.* 222. Fifthly, the enumeration of the parts of the property granted, in the conclusion of the deed, shews, that this construction is correct.

2. That if the defendants are wrong in their construction of the grant, the rights *reserved* are *perpetual*, and not limited to the existence of the old building. In the first place, the building was reserved in connexion with the reservation of the water, and for the enjoyment of it. Secondly, the reservation of the water is perpetual ; but this right would be defeated, unless the reservation of the building was also permanent. Thirdly, the stipulation of *W. Soper* to repair a part of the dam, is a *continuing* covenant. Did he bind himself to help keep the dam in repair *forever*, when his reserved rights would secure to him his portion of the water, for a *limited time* only? Fourthly, *Soper* covenants, that the plaintiffs may enter on his land, at all times, without paying damages, to repair the dam. Why should he do this, unless his right to enjoy his part of the water, is perpetual ? Fifthly, the plaintiffs covenant not to erect a saw mill or carding machine on the opposite side of

he river, so long as S*oper's* works are continued.    This shews, that the reservation is not  limited to the  life  of  the  old building.    Sixthly, the rights reserved are not to the grantors, but to one of them, *William Soper*, who owned  the  saw  mill and carding machine ;  and  the  whole  deed shews, that *William's* separate estate was not intended to be conveyed.

PETERS, J.    This case presents two questions : 1.  Was the land  demanded  conveyed to  *Marshall* and *Latham*, by the deed of the *Sopers ?*    2.  Or was it included in the reservation to *William Soper ?*

The grant was of a grist-mill and the bank whereon it stood, with the appurtenances thereof, on the *South* side of the  river, *West* of and  adjoining to the bridge, which crosseth the river. The grant is of land  and buildings.    The reservation is of a building only.    By a grant of  land, the superstructure passes. By a grant of the superstructure, *that only* passes.  2 *Bla. Comm.* 18.    The defendants admit, that by the term *bank*, land passes ;  yet they claim, that by this deed, that only passed, which was covered by the buildings.    The grant of the appurtenances  conveyed to the grantees a right of way  to the premises, and every thing else  necessary to  the enjoyment of the grant.    The land conveyed is under the buildings and adjoining to the bridge ;  and the building reserved is between the mill and the bridge, and *upon the land* in question.    The intention of the parties is obvious ;  and the terms of the grant are too plain to admit of  doubt.    Were they otherwise, they are to be taken most strongly against the grantors.  As the defendants have no estate in the land, and their interest in the building is limited to  its  existence, they  have  no right  to incumber the land beyond that  period ;  and having voluntarily destroyed it, their  interest  is  terminated ;  and by continuing in possession under a claim of right, they have become disseisors.

The plaintiffs are, therefore, entitled to judgment according to the agreement of the parties.

The other Judges were of the same opinion.

Judgment for plaintiffs.