## WINCHESTER *v.* HEES.

Under the description in a deed of "a certain dwelling-house, being the same in which I now live, and is the same owned by E. W.," the land in rear of the house, used by E. W. and the succeeding owners and occupiers in connection with the house, for the purpose of a wood-yard, and essential to its convenient enjoyment as a dwelling, passes, as incident to and a part of the house.

TRESPASS, for breaking and entering the plaintiff's close, and destroying the plaintiff's wood-shed thereon. Plea, soil and freehold in the defendant.

It appeared upon the trial that Elisha Wilbur owned the farm of which the *locus in quo* is part, and died in 1835, having devised it to his daughters, Lintha, Clarinda and Sally. On the 22d of August, 1840, the three daughters made partition, by which Sally took the north half and the other two jointly the south half of the old house. Clarinda and Sally, in making the parti-

tion, executed a quitclaim to Lintha of another part of the farm, and then follow these words of description : — " Also, said Lintha is to have one half part of the south half of the house, and a privilege to build addition to said part, and all other privileges that are necessary to occupy and repair said share."

Lintha and Sally at the same time executed to Clarinda a quitclaim of the field around the house by metes and bounds : " Except a part of the house and land which is deeded to Sally and Lintha ; also, one half of the south half of the house."

Both deeds contain the usual form of habendum, " together with all the privileges and appurtenances thereunto belonging."

On the 6th of February, 1844, Clarinda, by quitclaim in the same form, conveyed to Lintha all her interest " in and unto a certain dwelling-house, being one undivided half of the south half of the same house in which we now live and occupy, and is the same owned by Elisha Wilbur, with a right to use, repair and make such additions thereto as will be necessary for her convenience and occupancy thereof."

The plaintiff has the title of Lintha and the defendant that of Clarinda.

During the lifetime of Elisha Wilbur there was only the old house on the farm, and since his death a small house has been built, about thirty feet south of the old one. The land in controversy, on which stood a wood-shed, lies between the two houses. During the lifetime of Elisha Wilbur this land was used by him as a wood-yard, and the first wood-shed upon it was placed there about 1837, by one Lincoln, who occupied the south half of the old house under Clarinda and Lintha. This shed was a temporary structure, connected with the house, about eighteen or twenty feet long. It stood there until about 1844, when it was blown down. About the year 1849 the plaintiff bought the shed named in the writ, of the occupant of the north half of the house, and moved it to the south end, adjoining the house upon the *locus in quo*, where it remained until it was taken away by the defendant at the time of committing the alleged trespass. It was a very cheap and rough structure, made by setting posts in the earth,

and covering with hemlock boards. The old house has three outer doors; one at the south end, used only for the accommodation of the occupants of the south half; the others at the east and west sides, used by the occupants of both tenements.

The *locus in quo* is the place used by Elisha Wilbur, and the succeeding occupants of the south half for a wood-yard connected with that part of the house, and is the most convenient place for that purpose.

A verdict was taken, by consent, for the plaintiff, upon which judgment is to be rendered, or the same set aside and judgment entered for the defendant, according to the opinion of the court upon the foregoing case.

*Wheeler & Faulkner*, for the defendant, argued that the only question in the case under the pleadings is as to the ownership of the close. If the soil and freehold are in the defendant, it is not material to consider what privileges, short of a freehold interest, the plaintiff may have in the premises. The privilege reserved to the owner of the south half of the house, to build an addition, &c., precludes the inference of an ownership of the *locus in quo*, as resulting from and appurtenant to the ownership of the south half of the house.

*Lane*, for the plaintiff.

1. If anything be granted or reserved, whatever may be essential to its enjoyment will pass or be reserved. *Cocheco Manufacturing Co.* v. *Whittier*, 10 N. H. 305; *New-Ipswich Factory* v. *Bachelder*, 3 N. H. 190.

2. In the case of conveying a house, the land about it for a door-yard and wood-yard, and such outbuildings as are necessary to the enjoyment of the dwelling-house, will pass as an incident, without any specific description of them in the deed. *Gibson* v. *Brockway*, 8 N. H. 465; *Allen* v. *Scott*, 21 Pick. 25; *Hilton* v. *Gilman*, 5 Shep. 263; *Bennett* v. *Brittle*, 4 Rawle 339.

3. In this case the terms of the deed sufficiently describe the land on which the wood-shed stood.

SAWYER, J. Upon the pleadings in this case the only question raised is as to the title to the *locus in quo*. The plaintiff claims under Lintha Wilbur, and the defendant under Clarinda, and the respective rights of Lintha and Clarinda are to be determined by the construction to be given to the deed from the latter to the former, of the 6th of February, 1844. Prior to that conveyance each owned an undivided half of the south half of the house, " with a privilege to build an addition to said part, and all other privileges necessary to occupy and repair said share." Clarinda at the same time was sole owner of the adjoining land, except upon the north side, where it abutted upon the north half of the house owned by Sally Wilbur. By virtue of the deed of the 6th of February, 1844, Lintha became seized of the entire south half of the house, " with the right to use, repair and make such additions thereto as might be necessary for her convenience and occupancy thereof." Whether, by the phraseology used in this deed, to describe the right to make additions to the house, more is conveyed than Clarinda then owned in the premises of which she was seized as tenant in common with Lintha, it is unnecessary to consider. It is clear that by this deed all passed that she did thus own in those premises, and if more passed it must be a right or interest of some nature and to some extent in the adjoining land, owned by Clarinda in severalty, and described in somewhat broader terms than in the deeds of partition of the 22d of August, 1840, as a right to make such additions to the house as may be necessary for convenience and occupancy. If, in place of the shed which the plaintiff caused to be erected, there had been a structure of a character such as must be understood to have been contemplated under the description of an addition to the house ; such as would be a substantial enlargement of the house, and corresponding with it in the kind and character of the addition, and no question had arisen as to the time within which the additions were to be made, it is by no means clear that by the erection of such addition the grantee in the deed would not have secured a title to all the land covered by it, although it might have extended beyond the limits of the premi-

ses owned by Clarinda and Lintha in common, and covered more or less of the land owned by Clarinda in severalty. A deed of a house, with no definite description of the boundaries of the land on which it stands, is not necessarily to be limited on either side to the sills of the building, or to the outer surface of the foundation stones, but may extend, upon well settled principles, to more or less of the surrounding land. By the additional description inserted in the deed of the 6th of February, there may perhaps be understood to be included in the grant other land than such as might pass under the description of " the house ;" such other land to be located by the grantee by the erection thereon of additions to the house. Upon this view, the questions would arise whether a reasonable time must be understood as limited for the selection of the land by the erection of the additions; whether the lapse of five years from the delivery of the deed before the erection of the shed, may not have been such unreasonable delay as to preclude the grantor from claiming the right ; and if not, whether the shed was such an addition to the house as was contemplated.

These questions, however, may be waived, as, upon another view of the case, one undivided half of the *locus in quo* must be held to have passed by the deed of the 6th of February, from Clarinda to Lintha, independent of the clause in the deed which gives the right to make the additions ; and upon the same view Lintha was seized of the other half under the deeds of partition of the 22d of August, 1840.

Under the grant of a thing specifically described, whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, passes by the grant. This doctrine is based upon the ground that all that is essential to and connected with the subject of the grant, as parcel of it, or incident to it, passes under the specific description. Thus a grant of a messuage, a mill, or a house, by those designations includes the land on which they stand, and the adjoining land necessary to their beneficial enjoyment as such, and used with them. The doctrine on this subject is clearly expounded in the cases of *Whitney* v. *Olney,*

3 Mason 280, and *United States* v. *Appleton*, 1 Sumner 492. The cases of *New-Ipswich Factory* v. *Bachelder*, 3 N. H. 190; *Gibson* v. *Brockway*, 8 N. H. 465, and *Cocheco Manufacturing Co.* v. *Whittier*, 10 N. H. 205, are instances of its application in our own courts. The case finds that the *locus in quo*, prior to the death of Elisha Wilbur, in 1835, was used by him in connectian with the house, for the purpose of a wood-yard. He was then the owner of the house and of the premises thus used with it, and they continued to be thus used together by the various owners and occupants down to the time of the alleged trespass. A yard of this description and for such purpose is used in connection with almost every dwelling, and it cannot be doubted that it is essential to the convenient and beneficial enjoyment of the house. It is not distinctly stated in the case that it was thus essential in this instance, and that fact is material in the decision of the case. The facts which are stated are sufficient, however, to warrant a jury in so finding. The verdict having been taken by consent, it is to be understood that all facts have been found by the jury necessary to sustain it, of which there is any evidence in the case competent to be submitted to them as evidence of these facts. The *locus in quo* being essential to the beneficial enjoyment of the house, passed by the deeds to Lintha as part of the house, in the same manner as the front yard of a dwelling-house passes under the description of the premises as a dwelling-house, being parcel of it. There must be

*Judgment on the verdict.*